IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>　　　　　Plaintiff<br><br>vs.<br><br>GERBER LIFE INSURANCE COMPANY<br><br>　　　　　Defendant. | Case No.<br><br>COMPLAINT-CLASS ACTION |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.　Plaintiff Stewart Abramson ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.　"Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission.[1]

3.　The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

4. Plaintiff alleges that Defendant Gerber Life Insurance Company ("Gerber Life") commissioned a pre-recorded telemarketing call to a cellular telephone number to Mr. Abramson for the purposes of advertising Gerber Life goods and services, which is prohibited by the TCPA.

5. Because the calls to the Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

7. Plaintiff Stewart Abramson is a Pennsylvania resident, and a resident of this District.

8. Defendant Gerber Life Insurance Company is a New York corporation with its principal place of business located at 1311 Mamaroneck Avenue in White Plains, NY 10605. Gerber Life engages in telemarketing nationwide, including into this District.

**Jurisdiction & Venue**

9. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will likely result in at least one Class member from a different state.

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11. The Defendant regularly engages in business in this District, including making telemarketing calls into this District, as it did with the Plaintiff.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were made to this District. Furthermore, venue is proper because a substantial part of property that is the subject of the action is situated in this District; the Plaintiff's cellular telephone.

## TCPA and Automated Call Background

### The Telephone Consumer Protection Act

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

18. Gerber Life provides life insurance contracts to consumers.

19. Gerber Life uses telemarketing to promote its products and solicit new clients.

20. Gerber Life's telemarketing efforts include the use of automated dialing equipment and pre-recorded messages to send automated calls.

21. Gerber Life engages in use of this equipment because it allows for thousands of automated calls to be placed at one time, but its sales representatives, who are paid based on sales they complete, or on an hourly basis, only talk to individuals who pick up the telephone.

22. On January 10 and 11, 2018, the Plaintiff received a pre-recorded telemarketing call on his cellular telephone number (412) 362-XXXX.

23. The telemarketing call began with a distinctive click and pause after the Plaintiff answered.

24. A pre-recorded message then played advertising an insurance opportunity for people over fifty years of age.

25. These facts, as well as the geographic distance between the Plaintiff and the Defendant, as well as the fact that this call was part of a nationwide telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS") as that term is defined in 47 U.S.C. § 227(a)(1).

26. In fact, the use of a pre-recorded message is itself indicative of an ATDS, as it would be illogical to hand-dial a telephone call only to play a pre-recorded sales message.

27. In order to investigate the calling party, who wasn't identified in the pre-recorded message, the Plaintiff responded to the prompt from the recorded message.

28. On each call, the Plaintiff received a scripted sales pitch about life insurance and the telemarketer eventually sold him a Gerber Life insurance policy.

29. Confirming that the pre-recorded telemarketing calls were made to promote Gerber Life, the Plaintiff received an e-mail from info@family.gerberlife.com, after each call.

30. That e-mail address belongs to the Defendant.

31. The Plaintiff also received another call on January 12, 2018 that delivered an apparently identical pre-recorded message, but the caller hung up on the Plaintiff before completing the application process.

32. The two calls that the Plaintiff was able to connect to Gerber Life came from the Caller ID numbers 412-777-5611 and 412-777-8587.

33. When placing a phone call to either of those numbers, a message that the number is not in service is played.

34. It is believed that these Caller ID numbers were manipulated to make the call appear as if it were coming from a local number to increase the likelihood that it would be answered.

35. Manipulating the Caller ID number for the pre-recorded calls is itself further indication that an ATDS was used to make these calls.

36. Prior to these unsolicited calls, the Plaintiff has never done any business with Gerber Life.

37. Gerber Life did not have the Plaintiff's prior express written consent to make these calls.

38. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

39. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

**Class Action Statement Pursuant to LCvR 23**

40. As authorized by Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure and Rule 23(A) of the Local Rules for the Western District of Pennsylvania, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

41. The class of persons Plaintiff proposes to represent include:

All persons within the United States to whom: (a) Gerber Life and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) that could have promoted Gerber Life's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

42. Excluded from the Class are the Defendant, any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

43. The proposed Class members are identifiable through phone records and phone number databases, which are with the Defendant or their agents.

44. The automated technology used to contact the Plaintiff is capable of contacting hundreds of thousands of people a day, and so the potential Class members number in the thousands, at least. Individual joinder of these persons is impracticable.

45. Plaintiff is a member of the Class.

46. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether the Defendant used a pre-recorded message to make the calls at issue;

      b.     Whether the Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

      c.     Whether the Defendant's violations of the TCPA were negligent, willful, or knowing; and

      d.     Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

47. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same or similar dialing system and pre-recorded message on a cellular telephone line.

48. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

49. In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

50. The actions of the Defendant are generally applicable to the Class and to Plaintiff.

51. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

52. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

53. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## **Legal Claims**

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

54. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS.

56. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

58. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for

emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

### Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

Dated: January 24, 2018      By:   */s/ Clayton S. Morrow*
Clayton S. Morrow
Email: csm@consumerlaw365.com
Morrow & Artim, PC
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
Telephone: (412) 209-0656

        Anthony Paronich
        Email: anthony@broderick-law.com
        BRODERICK & PARONICH, P.C.
        99 High St., Suite 304
        Boston, Massachusetts 02110
        Telephone: (508) 221-1510
        *Subject to Pro Hac Vice*